Gary THELEN, Laura Thelen, and Angel Victoria Thelen, Plaintiffs,

v.

CATHOLIC SOCIAL SERVICES, a Wisconsin not-for-profit corporation; Rembert G. Weakland, individually and as President of the Board of Directors, Catholic Social Services, Inc.; Thomas R. Schneider, individually and as Executive Director, Catholic Social Services, Inc.; Ted John, individually and as Milwaukee Area Director, Catholic Social Services, Inc.; Cecilia Braam, individually and as Child Welfare Supervisor, Catholic Social Services, Inc.; Robert Mishler, individually and as Adoption Worker, Catholic Social Services, Inc.; Louis P. Dunlap, individually and as Deputy Director of Administrative Hearings, Wisconsin Department of Health and Social Services; Lloyd W. Bonneville, individually and as Attorney, Wisconsin Department of Health and Social Services, Defendants.

No. 87–C–0373.

United States District Court, E.D. Wisconsin.

July 27, 1988.

Joseph M. Amidon and Jeffry Van Groll, Hyatt Legal Services, Milwaukee, Wis., for plaintiffs.

Stephen W. Hayes, Von Briesen & Purtell, S.C., Milwaukee, Wis., for defendants Weakland Cahtolic Social Services, Schneider, John, Braam, Mishler and Catholic Social Services, Inc.

Donald P. Johns, Asst. Atty. Gen., Madison, Wis., for defendants Dunlap and Bonneville.

Charles H. Barr, Menomonee Falls, Wis., Guardian ad Litem for Angel Victoria Thelen.

## DECISION AND ORDER

WARREN, Chief Judge.

Wisconsin law provides that, except under certain circumstances, no petition for adoption may be filed unless the child has been in the home of the prospective adoptive parents for six months or more. Sec. 48.90(2), Wis.Stats. If, prior to adoption but after six months, a licensed agency seeks to remove the child from the home, the prospective parents are entitled to a hearing before the child is removed. Sec. 48.64(1m), Stats. If, during the six months prior to adoption, the agency has removed the child from the home, the parents are entitled to a post-removal hearing. Sec. 48.64(4). No provision under Wisconsin law provides the prospective parents with an opportunity for a pre-removal hearing during the first six months that the child is placed in the home.

The narrow issue before the Court is whether prospective adoptive parents with whom a child has been placed have a Due Process right under the United States Constitution to a hearing prior to the removal of the child during the initial six-month period of placement. Based on the decision below, the Court finds that the prospective parents have no constitutional entitlement to a pre-removal hearing during the initial six-month period of placement.

## I. BACKGROUND

In 1982, plaintiffs Gary and Laura Thelen, a married couple residing in Milwaukee, Wisconsin, applied to Catholic Social Services as prospective adoptive parents. Catholic Social Services is a child-placing agency licensed by the State of Wisconsin Department of Health and Human Services. After extensive interviews, home visits, submissions for physical examinations, and payment of the required fees, the Thelens fulfilled all of the Catholic Social Services standard requirements for consideration as prospective adoptive parents. In May of 1986, the Thelens were informed by Catholic Social Services that a baby girl was available for placement. On June, 4, 1986, the Thelens and Catholic Social Services executed an Adoptive Parents' Agree-

ment. The agreement provided, in part, that "... at any time the agency indicates it to be in the best interest of the child, plans will be made for termination of the placement."

The Thelens contend that the parties also agreed that unless an emergency arose, baptism of the child would not occur until the Thelens were permitted to adopt the child. Amended Complaint, at paragraph 20, and Attachment #2. Furthermore,

Upon execution of the Pre-adoptive Placement Agreement, both parties agreed that when a child would be placed into an adoptive home: (1) the adoptive parents would arrange for the child's baptism at their parish church and (2) when Catholic Social Services agreed to the baptism of a child in the adoptive placement, a letter would be sent to the adoptive couples' pastor informing him of the placement and advising that the notation "Adoption through Catholic Social Services, Milwaukee" be noted in the parish baptism registry.

Amended Complaint, at 21.

Catholic Social Services denies that any agreement was made as to the baptism of the child.

After the Adoptive Parents' Agreement was executed, the child was placed with the Thelens. The Thelens allege that approximately one month later, they were given permission by Catholic Social Services to baptize the child. Amended Complaint, at 23. A certificate from St. Helen's Parish in Milwaukee states that on July 6, 1986, Angel Victoria Thelen, the child of Gary Thelen and Laura Borkowski, was baptized according to the Rite of the Roman Catholic Church.

On September 16, 1986, Catholic Social Services received an anonymous telephone call that accused Laura Thelen of marital infidelity with a man who later committed suicide in her presence. That same day, Catholic Social Services called the Thelens and requested that they answer questions concerning the accusation. After a meeting, the Thelens were informed that Catho-

lic Social Services would conduct its own "in-house" investigation.

At another meeting, on September 25, 1986, the Thelens were advised that Catholic Services had decided to terminate the placement. The child was taken from the Thelens at that meeting.

The Thelens then filed a petition for review before the Wisconsin Department of Health and Social Services. In a decision dated February 9, the Department ruled that it was without authority to review the decision of Catholic Social Services since the placement of the child lasted for less than six months and the statutes do not provide for a hearing under such circumstances. The Department's decision was affirmed in an opinion by state Circuit Judge Michael Sullivan, *Thelen, et al. v. Wisconsin Department of Health and Social Services, et al.*, Slip Op. (May 19, 1987), but was reversed by the Wisconsin Court of Appeals, *Thelen, et al. v. Wisconsin Department of Health and Social Services, et al.*, 143 Wis.2d 574, 422 N.W.2d 146 (1988). The appeals court held that the Thelens were entitled to a post-removal hearing by the Department under § 48.64(4)(a), Stats. 143 Wis.2d at 578–79.[1]

---

1. Section 48.64 provides as follows:
   **48.64. Placement of children in foster homes and group homes**
   **(1) Definition.** In this section, "agency" means the department, a county department or a licensed child welfare agency authorized to place children in foster homes.
   **(1m) Foster home and group home agreements.** If an agency places a child in a foster home under a court order or voluntary agreement under s. 48.63, it shall enter into a written agreement with the head of the home. The agreement shall provide that the agency shall have access at all times to the child and the home, and that the child will be released to the agency whenever, in the opinion of the agency placing the child or the department, the best interests of the child require it. If a child has been in a foster home or group home for 6 months or more, the agency shall give the head of the home written notice of intent to remove the child, stating the reasons for the removal. The child shall not be removed before completion of the hearing under sub. (4)(a) or (c), if requested, or 30 days from the receipt of the notice, whichever is later, unless the safety of the child requires it. If the safety of the child requires removal, s. 48.19 shall apply. If an agency removes a child from an adoptive placement, the head of the home shall have no claim against the placing agency for the expense of care, clothing or medical treatment.
   **(2) Supervision of foster home and group home placements.** Every child in a foster home or group home shall be under the supervision of an agency.
   [sic—no subsection (3) exists]
   **(4) Orders affecting the head of a home or the children.** (a) Any decision or order issued by an agency that affects the head of a foster or group home or the children involved may be appealed to the department under fair hearing procedures established under department rules. The department shall, upon receipt of such petition, give the head of the home reasonable notice and opportunity for a fair hearing. The department may make such additional investigation as it deems necessary. Notice of the hearing shall be given to the head of the home and to the departmental subunit, county department or child welfare agency that issued the decision or order. Each person receiving notice is entitled to be represented at the hearing. At all hearings conducted under this subsection, the head of the home, or a representative of the head of the home, shall have an adequate opportunity, notwithstanding s. 48.78(2)(a), to examine all documents and records to be used at the hearing at a reasonable time before the date of the hearing as well as during the hearing, to bring witnesses, to establish all pertinent facts and circumstances, and to question or refute any testimony or evidence, including the opportunity to confront and cross-examine adverse witnesses. A continuance for a reasonable period of time shall be granted when an issue is raised for the first time during a hearing. This requirement may be waived with the consent of the parties. The decision of the department shall be based exclusively on evidence introduced at the hearing. A transcript of testimony and exhibits, or an official report containing the substance of what transpired at the hearing, together with all papers and requests filed in the proceeding, and the findings of the hearing examiner shall constitute the exclusive record for decision by the department. The department shall make the record available at any reasonable time and at an accessible place to the head of the home or his or her representative. Decisions by the department shall specify the reasons for the decision and identify the supporting evidence. No person participating in an agency action being appealed shall participate in the final administrative decision on such action. The department shall render its decision as soon as possible after the hearing and shall send a certified copy of its decision to the head of the home and to the departmental subunit, county department or child welfare agency that issued the decision or order. The decision shall be binding on all parties concerned.

The court noted that although § 48.64(1m) applied only to foster homes, subsection (4)(a) did not preclude application to "preadoptive foster placements." *Id.* at 579, 422 N.W.2d 146.

Meanwhile, the Thelens also pursued relief in federal court. On March 27, 1987, acting *pro se*, they filed suit claiming that Catholic Social Services, the Department of Health and Social Services, and others had conspired under color of state law to deny them their right to equal protection under the law. Upon the filing of their complaint, the Thelens immediately moved for a temporary restraining order that would return the child to them.

This Court declined to enter the temporary restraining order *ex parte* and scheduled the matter for a hearing. *See* March 27, 1987, *Order*. After holding the hearing, the Court again declined to enter a temporary restraining order. *See Order Denying Motion For Temporary Restraining Order*, dated April 30, 1987.

In August of 1987, the Thelens retained counsel, who sought leave to file an amended complaint. Leave to amend was subsequently granted by the Court. The amended complaint alleged two causes of action: (1) violation of Due Process under 42 U.S.C. § 1983, and (2) breach of contract under state law. The Due Process claim alleged that the Thelens were deprived of their "fundamental liberty and/or property interest" in the pre-adoptive family unit without due process of law. Amended Complaint, at 37.

On September 25, 1986, Catholic Social Services abridged the plaintiffs' constitutional entitlement to the procedural protections of due process when they re-

moved Angel Victoria Thelen and terminated the pre-adoptive family unit by: (1) failing to appraise the plaintiffs in writing of the actual allegations prescribing removal of Angel, (2) by refusing to give the plaintiffs an opportunity to review any and all evidence forming the basis of said allegations, (3) by not allowing the plaintiffs to cross examine the evidence which supported the allegations, (4) and by refusing the plaintiffs an administrative proceeding where the element of fairness inherent in the concept of due process would be guaranteed....

*Id.*, at 38. Named as defendants were: Catholic Social Services, three of its directors and two of its employees. Also listed as defendants were a deputy director and attorney for the Wisconsin Department of Health and Social Services. Gary and Laura Thelen were named as plaintiffs, along with Angel Victoria Thelen. In an *Order* dated August 12, 1987, the Court appointed Attorney Charles Barr as guardian ad litem for the child.

Presently pending before the Court are (1) a motion by Catholic Social Services and its related defendants to dismiss the amended complaint or, alternatively, for summary judgment; and (2) a motion by the Department of Health and Social Services employees for summary judgment. Although the motions raise numerous legal issues, the Court will resolve the case on the contention of Catholic Social Services that the amended complaint fails to allege a constitutional claim under 42 U.S.C. § 1983. No determination is made as to the merits of the other issues raised.[2]

(b) Judicial review of the department's decision may be had as provided in ch. 227.

(c) The circuit court for the county where the child is has jurisdiction upon petition of any interested party over a child who is placed in a foster home or group home. The circuit court may call a hearing, at which the head of the home and the supervising agency under sub. (2) shall be present, for the purpose of reviewing any decision or order of said agency involving the placement and care of the child. The court shall determine the case so as to promote the best interests of the child.

**2.** In their amended complaint and in their brief on the motion to dismiss, Gary and Laura Thelen do not allege that the child has any protected interest in the pre-adoptive family unit beyond that of the prospective adopted parents. The guardian ad litem, apparently finding no detriment to the minor child in the arguments raised by the Thelens, made no separate filing on behalf of the child. Therefore, the Court makes no determination as to whether Gary and Laura Thelen have legal standing to bring suit on behalf of the child.

## II. ANALYSIS

Title 42, United States Code, § 1983, provides a cause of action for deprivations under state law of "any rights, privileges, or immunities secured by the Constitution...." In order to state a claim upon which relief may be granted under § 1983, a complaint must allege at least two elements: (1) that plaintiffs were deprived of a right secured by the Constitution and laws of the United States, and (2) that the defendants deprived plaintiffs of this right while acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978).

In their Amended Complaint, plaintiffs claim they were deprived of their "liberty and/or property" interest in the "pre-adoptive family unit" without due process of law.[3] After the filing of the Amended Complaint, the Wisconsin appellate court determined that the Thelens were entitled under state law to a hearing subsequent to the removal of the child. This Court has no reason to believe that this hearing will not now take place or that it will fail to comply with the requirements of procedural due process.[4] *See Kremens v. Bartley*, 431 U.S. 119, 128–129, 97 S.Ct. 1709, 1714–15, 52 L.Ed.2d 184 (1976). As such, this Court's inquiry as to whether the Thelens were entitled to a hearing or other procedural protection after the removal of the child has become moot. The issue before the Court at present centers solely on whether the Thelens were entitled under the Fourteenth Amendment to a hearing prior to the removal of the child.

### A. *Liberty Interest*

The Due Process protections of the Fourteenth Amendment apply only to the deprivation of interests encompassed by the Amendment's protection of liberty and property. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed. 2d 548 (1972). In order to establish a violation of Fourteenth Amendment Due Process right, plaintiffs must establish, first, that they have been deprived of a constitutionally protected liberty or property interest and, second, that the procedure used to deprive them of the interest was constitutionally deficient. *Id.* Thus, the initial hurdle which must be overcome by the Thelens is establishing that they have been deprived of a constitutionally protected liberty or property interest. Catholic Social Services contends that the Thelens cannot establish that the "pre-adoptive family unit" is a protected liberty. The Thelens respond (1) that their status as the pre-adoptive parents of the child is constitutionally protected;[5] and (2) that even if the status is not constitutionally protected, the conduct of Catholic Social Services, in permitting the Thelens to proceed with the baptism of the child, created a reasonable liberty interest or expectation that is protected by the 14th Amendment.

■ The Court begins by determining whether the Thelens have a constitutionally protected interest in their relationship with the child placed with them. In the Su-

---

**3.** Although the amended complaint states that plaintiffs were deprived of a "liberty and/or property" interest, the Thelens, in their brief on the motion to dismiss, make no attempt to argue that the "pre-adoptive family unit" is a constitutionally protected property interest. In any event, the Court's research finds no support for such a finding.

**4.** In fact, section 48.64(4) provides the procedural safeguards specifically sought by the Thelens at paragraph 38 of the amended complaint. Subsection (4) provides, in part, that at the hearing the Thelens shall be provided an opportunity "to examine all documents and records to be used at the hearing at a reasonable time before the date of the hearings as well as during the hearing, to bring witnesses, to establish all pertinent facts and circumstances, and to question or refute any testimony or evidence, including the opportunity to confront and cross-examine adverse witnesses."

**5.** The Thelens, at times, refer to their protected liberty interest as their "status" as prospective adoptive parents. The Court, however, points out that the allegations of the amended complaint concern the Thelens protected liberty interest in a specific family situation—namely, the pre-adoptive placement of Angel Victoria with the Thelens. The amended complaint does not raise, and the Court does not consider, a contention that Catholic Social Services has deprived the Thelens of their status as potential adoptive parents for all future placements.

preme Court case of *Smith v. Organization of Foster Families*, 431 U.S. 816, 842–47, 97 S.Ct. 2094, 2108–11, 53 L.Ed.2d 14 (1977), the court discussed, but did not resolve, the issue of whether foster parents had a constitutionally protected liberty interest in their relationship with a foster child. The court noted that while there exists a private realm of family life that the state cannot enter, the relationship between a foster parent and foster child is not the same. 431 U.S. at 842–43, 97 S.Ct. at 2108–09. "[W]hatever emotional ties may develop between foster parent and foster child have their origins in an arrangement in which the State has been a partner from the outset." *Id.* at 845, 97 S.Ct. at 2110. The court went on to state that in cases like the one before it, where the claimed liberty interest derives from a knowingly assumed contractual relationship with the State, it is appropriate to ascertain from state law the expectations and entitlements of the parties. *Id.* at 845–46, 97 S.Ct. at 2110–11.

Under Wisconsin law, prospective adoptive parents such as the Thelens may not file a petition for adoption until the child had been in their home for more than six months. Sec. 48.90(2), Stats. In order for a child to be placed with prospective adoptive parents, the prospective home must be a licensed foster home. Sec. 48.833, Stats. Once a petition is filed, an investigation and recommendation is made by the agency involved and a hearing is required. *See* Sec. 48.81–48.91, Stats. At the hearing, the determination of adoption is made based on the best interest of the child. Sec. 48.91(3), Stats. If the agency is the legal guardian of the child, its recommendation is presumed to be in the best interest of the child. Sec. 48.85, Stats. Finally, if the petition is withdrawn or is denied by the circuit court, the child remains in the legal custody of the agency. Sec. 48.95, Stats.

At first blush, these provisions would seem to establish that the interest of the preadoptive parents is no different from that of a foster parent. If that were the situation, the case law of the United States Court of Appeals for the Seventh Circuit

would dictate that no constitutionally protected liberty interest existed. In *Kyees v. County Department of Public Welfare*, 600 F.2d 693 (1979), the Seventh Circuit answered the question left open by the Supreme Court in *Smith* and held that under the laws of Indiana, no liberty interest was created in the relationship between foster parents and foster children—even when that relationship has continued for up to two years. The appellate court reasoned: "[I]n this case, as in *Smith*, the likelihood or virtual certainty of eventual termination of the foster relationship is made clear in the state statutes and in the contracts executed by the foster parents." 600 F.2d at 698. Furthermore, despite the length of the relationship, "it could fairly be said that the foster parents at least had reason to believe that the state agency reserved the right to terminate the relationship." *Id.* at 699.

But the situation before this Court differs in the expectation of the parents. Unlike the foster parents, the prospective adoptive parents cannot be said to expect that their relationship with the child will be ended. To the contrary, the very motive of the prospective adoptive parents, as well as the State, is to secure a life-long relationship between the adoptive parents and the child. That expectation, at least on the part of the prospective adoptive parents, begins with their initial application with the child placement agency. The expectation certainly becomes greater when, after exhaustive evaluation, the prospective parents are informed by the agency that they qualify for the placement of a child in their home; and it becomes greater still when a child is actually placed in the home. Although no legal guardianship of the child has changed at this time, there can be little doubt that the expectation of the prospective adoptive parents, unlike the foster parents in *Smith* and *Kyees*, will be that the child eventually will be theirs forever.

The reasonableness of this expectation must be examined in the context of the relevant Wisconsin statutes. *See Smith*, 431 U.S. at 860, 97 S.Ct. at 2118 (Stewart, J. concurring) (mere subjective expectation

is not liberty or property protected Due Process Clause). Again, no legal guardianship has changed. Six months must still pass before an application for adoption can be made. An investigation and recommendation must still be made by the agency; and a hearing before a circuit judge must determine what is in the best interest of the child. Still, under the same provisions, it is the prospective adoptive couple with whom the child has been placed—and not another prospective adoptive couple—who has the statutory right to apply for adoption of the specific child who has been placed in their home. It is that particular prospective adoptive couple, not another prospective couple, that takes one step further toward legal custody of the particular child with each day that the child is in the home. Therefore, while the State ultimately will decide whether the prospective adoptive parents do gain legal custody of the child, it cannot be said that the parents with whom the child has been placed have a reasonable expectation under Wisconsin law that the relationship will eventually be terminated.

Based on this reasoning, the Court concludes that in the context of Wisconsin law, the prospective adoptive couple has a limited, but not wholly insignificant, constitutionally protected liberty interest in their family unit during the initial six-month period that a child is placed in their home.

The Court, however, does not find that this interest becomes constitutionally greater by the agreement voluntarily entered into by the parties in this case. Under the agreement, voluntarily entered into by the Thelens and Catholic Social Services, the agency would be able to remove the child from the home at any time the agency indicated that removal would be in the best interest of the child. Nor does the Court find that the alleged conduct of Catholic Social Services, in permitting the baptism

of the child before adoption, increases or independently creates the Thelens' protected liberty interest. The baptism, in and of itself, does not alter the statutory relationship between the Thelens and the child. That relationship is solely the creature of the laws of the State of Wisconsin and under the relevant state law, it is not changed by the performance of a religious ceremony. *Compare* Sec. 765.16(1), Stats. (permitting ordained clergy of any religious denomination to officiate at marriage ceremony legally recognized by state). Beyond that point, the Court has serious reservations about the Thelens' contention that their role in the baptism establishes "not only in the eyes of the church, but in the eyes of the community as well" that the Thelens are the parents of the child. Plaintiffs' Brief in Opposition to the Defendants' Motion to Dismiss, at 9.[6] As such, the Court finds that the constitutionally protected liberty interest of the Thelens in the case before this Court does not exceed the interest established by state law.

The Court next turns to a determination of whether the procedure used by Catholic Social Services to deprive the Thelens of their limited liberty interest was constitutionally deficient.

## B. *Necessity of Pre–Removal Hearing*

█ Where procedural due process must be afforded because a constitutionally-protected interest is within the ambit of the Fourteenth Amendment, it must be determined "what process is due" in the particular context. *Smith v. Organization of Foster Families*, 431 U.S. at 847, 97 S.Ct. at 2111. The starting point for this analysis is *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). To identify the specific dictates of due process, a court should consider (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such

---

**6.** Such an assertion finds no support in the doctrines of the Roman Catholic Church, which dictate that the theological importance of a child's baptism is to incorporate the child into the Church. *See* Canon 96, *Code of Canon Law* (Latin–English Ed. 1983) ("By baptism one is incorporated into the church of Christ and is

constituted as a person in it with the duties and rights which are proper to Christians ..."); *see also Catholic Almanac*, at 266 (1975) ("Baptism is the sacrament of spiritual regeneration by which a person is incorporated in Christ and made a member of His Mystical Body, given grace, and cleansed of original sin").

**1186**

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335, 96 S.Ct. at 903. As stated previously, since the Thelens are entitled to a post-removal hearing under Wisconsin law, the issue before the Court is whether they were entitled to a pre-re-moval hearing.

■ In considering the three factors, the Court finds that the state's interest in protecting the best interest of the child clearly dictates that no pre-removal hearing is required to satisfy the due process requirements of the Fourteenth Amendment. As stated previously, the interest of the prospective adoptive parents at this stage is limited. Yet the State's interest is quite strong. During the first six months of placement, the State (through the agency) remains legal guardian of the child, while the prospective adoptive parents remain simply prospective. The State, not the prospective parents, will ultimately decide whether the relationship between the child and the prospective parents will become permanent. The State, not the parents, is empowered by statute to watch over the best interest of the child. The strength of the State's interest during this initial six-month period is recognized by the prospective adoptive parents when they sign the Adoptive Parents' Agreement, which provides that the state agency may terminate the placement at any time the agency finds such a move would be in the best interest of the child. Thus, during the initial six-month period of placement, the relationship between the State and the child must be considered paramount to the relationship between the prospective adoptive parents and the child.

Furthermore, the dominance of the State's interest justifies the State's removal of the child from placement prior to the holding of a hearing on the matter. If the State determines that removal is in the best interest of the child, the State must be able to act on such a decision without the delay of a hearing. To hold otherwise, that is, to force the State to postpone removal until after the holding of a hearing, would be to place the interests of the prospective adoptive parents above the interests of those empowered by statute (and contract) to oversee the best interest of the child.

" 'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In the case at hand, the Thelens were given notice of the reason the child was being removed from them. At a meeting with Catholic Social Services, they were informed that Catholic Social Services was conducting an "in-house" investigation on the veracity of the accusation of marital infidelity. At a later meeting, they were informed that the fruits of the investigation warranted a termination of the child's placement with them. The Court finds that as a matter of law, no further pre-removal process was required in order to satisfy the requirements of the Fourteenth Amendment.

### III. CONCLUSION

Under the laws of the State of Wisconsin, prospective adoptive parents have a liberty interest in their family unit during the first six months that a child is placed with them. That liberty interest, though limited, is protected by the Due Process Clause of the Fourteenth Amendment. The interest does not require, however, that the prospective adoptive parents, such as the Thelens, be afforded a hearing prior to the removal of the child when the State of Wisconsin or its agent determines that removal is in the best interest of the child. Also, since the State of Wisconsin will provide the Thelens with a hearing after removal of the child, their due process claims relating to a post-removal hearing have

**1187**

become moot. Accordingly, the Court finds that plaintiffs' amended complaint fails to allege a claim under 42 U.S.C. § 1983 upon which relief can be granted. Furthermore, the Court declines to exercise pendent jurisdiction over the remaining state contract claim. The case is hereby DISMISSED; with prejudice as to the federal claim, without prejudice as to the state claim.